# In the United States Court of Federal Claims

No. 17-205C
Filed: June 14, 2019

|  |  |  |
|---|---|---|
| CURTIS P. REID, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civilian Pay; RCFC 56; Civilian Marine |
| v. | ) | Personnel Instructions; 5 U.S.C. § 5348; |
| | ) | 46 U.S.C. § 10313. |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

*Cain Denny*, Counsel of Record, Cain Denny, PA, Charleston, SC, for plaintiff.

*Sean L. King*, Trial Attorney, *Steven J. Gillingham*, Assistant Director, *Robert E. Kirschman, Jr.*, Director, *Joseph A. Hunt*, Assistant Attorney General, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC; *Patricia Reddy-Parkinson*, Of Counsel, United States Military Sealift Command, Washington, DC, for defendant.

## **MEMORANDUM OPINION AND ORDER**

<u>GRIGGSBY, Judge</u>

## I.   INTRODUCTION

In this civilian pay action, plaintiff, Curtis P. Reid, seeks to recover alleged unpaid wages and monetary damages from the government in connection with his employment as a federal civilian employee serving aboard a public vessel of the United States.  *See generally* Am. Compl. The government has moved to dismiss Counts II and IV of the amended complaint upon the grounds that: (1) the Court does not possess subject-matter jurisdiction to consider plaintiff's quantum meruit claim and (2) the Tucker Act's waiver of the government's sovereign immunity does not extend to the punitive damages provided for pursuant to 46 U.S.C. § 10313(g).  *Id.* at 28-29, 32-33.  The parties have filed cross-motions for summary judgment on the issues of:  (1) whether plaintiff was assigned to the position of a Wiper and, thus, entitled to receive pay as a Wiper; (2) whether plaintiff is entitled to recover unpaid wages pursuant to 5 U.S.C. § 5348(a); and (3) whether plaintiff is entitled to recover unpaid wages pursuant to 46 U.S.C. § 10313.  *See*

*generally* Pl. Mot.; Def. Mot.  Lastly, the government has also moved for summary judgment in its favor on the issue of whether the government's involuntary deductions of plaintiff's pay constitute a takings in violation of the Fifth Amendment of the United States Constitution.  Def. Mot. at 33-34.

For the reasons set forth below, the Court:  (1) **GRANTS-IN-PART** the government's motion to dismiss; (2) **DENIES** plaintiff's motion for summary judgment; (3) **GRANTS** the government's cross-motion for summary judgment with regards to Counts I, II, III, and V of the amended complaint; and (4) **DISMISSES** the amended complaint.

## II.     FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.     Factual Background

Plaintiff, Curtis P. Reid, served as a federal civilian employee aboard the United States Naval Ship Charles Drew (the "USNS Drew")—a public vessel of the United States under the control of the United States Navy ("Navy"), Military Sealift Command (the "MSC").  Am. Compl. at ¶ 2.  In this civilian pay action, plaintiff seeks to recover alleged unpaid wages and monetary damages from the government in connection with his deployment aboard the USNS Drew.  *Id.* at ¶ 8.  It is undisputed that plaintiff performed the duties of a Wiper during this deployment. [2]  *Id.*; Def. Mot. at 4.

Specifically, plaintiff alleges that the MSC improperly compensated him at the prevailing rate of pay for the position of a Supply Utilityman, rather than at the prevailing rate of pay for the position of a Wiper, during this deployment.  Am. Compl. at ¶ 16; *see also id.* at ¶ 13.  Plaintiff also alleges that the MSC's cause to involuntarily deduct his pay—due to an overpayment of overtime pay—was insufficient.  *Id.* at ¶ 16.  And so, plaintiff contends that he is entitled to recover, among other things, unpaid wages and punitive damages from the government.  *Id.* at ¶ 21; *see also id.* at Prayer for Relief.

---

[1] The facts recited in this Memorandum Opinion and Order are taken from the amended complaint ("Am. Compl."); plaintiff's motion for summary judgment ("Pl. Mot."); the government's motion to dismiss, cross-motion for summary judgment, and response and opposition to plaintiff's motion for summary judgment ("Def. Mot."); and the Appendix attached thereto ("Def. App'x.").  Except where otherwise noted, all facts recited herein are undisputed.

[2] In Counts VI and VII of the amended complaint, plaintiff seeks attorneys' fees and costs.  Am. Compl. at ¶¶ 35-39.

### 1.   Plaintiff's Deployment On The USNS Drew

As background, the MSC is the leading provider of ocean transportation for the Navy and the Department of Defense.  Def. Mot. at 3.  The MSC workforce consists of approximately 5,600 personnel, known as civil service mariners ("CIVMAR"), who are federal civilian employees that serve primarily at sea aboard non-combatant Navy ships.  Def. App'x at 1 (Declaration of Andrew Kallgren); *see also* Def. Mot. at 3.

On October 12, 2010, the MSC appointed plaintiff to a CIVMAR position as a C848 Supply Utilityman assigned to the East Coast, with a base salary of $24,188.  Def. App'x at 14 (SF-50, dated Oct. 12, 2010).  A Supply Utilityman is an entry-level position in a ship's steward or supply department that involves hotel services work, food handling, and sanitation of the ship. *Id.* at 15-16 (Supply Utilityman Job Description); *see also* Def. Mot. at 3.

 On April 30, 2012, a senior marine placement specialist recommended that plaintiff be assigned to the USNS Drew "as relief to fill [the] vacant WIPER BILLET" position.  Pl. Mot. at Ex. 1 (MSC E-Mail, dated April 30, 2012).  The e-mail regarding this assignment states that "WIPER Reid is on a TEMP PROM to WIPER (363) for this assignment."  *Id.*

On May 3, 2012, plaintiff was assigned to the USNS Drew.  Def. App'x at 19 (SF-50, dated May 3, 2012).  Plaintiff's assignment to the USNS Drew is recorded in a Standard Form 50 ("SF-50"), dated May 3, 2012, which states that the nature of the action is a "reassignment" and that the "CIVMAR [is] performing duties of 8363 Wiper."  *Id.*  The SF-50 also states that the specified amounts of plaintiff's basic pay and locality adjustment "reflect permanent salary which is higher than ship's salary."  *Id.*

The basic pay for a Wiper on a ship like the USNS Drew is $34,858.00, with an overtime pay rate of $25.98 per hour.  *Id.* at 25 (Pacific Schedule of Wages).  In contrast, the basic pay for a Supply Utilityman on the same ship is $35,719.00, with an overtime pay rate of $12.20 per hour.  *Id.* at 27 (Pacific Schedule of Wages).  And so, while a Supply Utilityman receives a higher base rate of pay than a Wiper, the overtime rate of pay for a Supply Utilityman is lower than the overtime rate of pay for a Wiper.

On May 6, 2012, plaintiff reported to the USNS Drew for deployment.  *Id.* at 30 (OPA, dated May 6, 2012).  Upon his arrival, the ship generated an Outport Personnel Action ("OPA") message, stating that plaintiff's duty status is the position of a Wiper, effective May 3, 2012.  *Id.*

This message was sent to the MSC's payroll department for processing. *Id.* at 30, 32-33 (Declaration of Dorothy Abreu).

When plaintiff returned from this deployment on September 4, 2012, the USNS Drew generated another OPA message stating that plaintiff's duty status was the position of Wiper while deployed aboard the ship. *Id.* at 34 (OPA, dated Sept. 4, 2012). This message was also sent to the MSC's payroll department. *Id.* On March 29, 2013, the master of the USNS Drew sent a sea service letter that confirmed plaintiff's deployment dates and that stated that plaintiff was a Wiper while serving on the USNS Drew. Pl. Mot. at Ex. 6 (Sea Service Letter, dated March 29, 2013).

### 2.  The Civilian Marine Personnel Instructions

A CIVMAR's terms and conditions of employment are governed by the Civilian Marine Personnel Instructions ("CMPI") and the Navy's personnel policies. Def. App'x at 6 (Declaration of James Shine). The CMPI implements 5 U.S.C. § 301 and 5 U.S.C. § 302. *Id.* at 100 (CMPI 1.1-1). Specifically, Section 301 provides that:

> The head of an Executive department or military department may prescribe regulations for the government of his department, the conduct of its employees, the distribution and performance of its business, and the custody, use, and preservation of its records, papers, and property.

5 U.S.C. § 301. Section 302 further provides that:

> (b) In addition to the authority to delegate conferred by other law, the head of an agency may delegate to subordinate officials the authority vested in him—
>
> > (1) by law to take final action on matters pertaining to the employment, direction, and general administration of personnel under his agency

5 U.S.C. § 302(b)(1). And so, the CMPI applies to all CIVMARs and these regulations define and regulate the terms and conditions of employment for CIVMARs. Def. App'x at 100 (CMPI 1.1-.2).

Specifically relevant to this case, CMPI 330 "governs the recruitment, evaluation and selection of civil service marine employees for appointment, conversion to an appointment, promotion and reassignment." *Id.* at 216 (CMPI 330.1-1). This regulation defines "base rate of pay" as "[t]he authorized minimum cash compensation without special pay benefits, expressed as an annual rate of pay for MSC civil service marine positions." *Id.* at 217 (CMPI 330.1-5).

CMPI 330 also defines a "reassignment" as a "[p]ersonnel action taken to place an employee in a different position (rating) without a change to the base rate of pay." *Id.* at 219 (CMPI 330.1-5).

CMPI 531, entitled Wage Administration, implements 5 U.S.C. § 5348(a), which provides that the compensation of officers and crews of vessels shall be fixed and adjusted from time to time, as nearly as is consistent with the public interest. *Id.* at 107 (CMPI 531.1-2). This regulation provides that "[t]he base rate of pay for mariner positions is provided in the wage schedules. Each position has a single, unique rate of base pay." *Id.* at 110 (CMPI 531.3-1(d)). The regulation also provides that authorized pay rates are available to all CIVMAR positions including: (1) permanent positions, (2) one-voyage only positions, (3) interim positions, and (4) temporary positions. *Id.* at 111 (CMPI 531.4-1(a)). In addition, CMPI 531 provides that "[t]he marine employee officially assigned to an authorized position is entitled to only the corresponding wages for that position found in the appropriate schedule of wages, except as indicated in CMPI 610.1-8.c." *Id.* at 112 (CMPI 531.4-3(b)).

CMPI 610, entitled Hours of Work and Premium Pay, also implements 5 U.S.C. § 5348 and this regulation "regulates the hours of work and premium pay for all civilian mariners. The regulation applies to all civilian mariners (CIVMARs) employed by Military Sealift Command . . . ." *Id.* at 118 (CMPI 610.1-1, 1-2). In this regard, CMPI 610 provides that:

> It is the policy of Commander, Military Sealift Command (COMSC) that CIVMARs will be given just compensation for their services. CIVMARs will not be required to perform work for which premium pay is authorized, and then denied such pay.

*Id.* (CMPI 610.1-3). The regulation also defines "premium pay" as "compensation over and above base pay" and provides that "overtime" is "premium pay payable for work outside of normal working hours and certain types of work outside of regularly prescribed duties." *Id.* at 118 (CMPI 610.1-4(a), (b)).

It is the MSC's policy that when a CIVMAR is assigned to a position that is not a permanent position—and the permanent position carries a higher base rate of pay—the MSC will manually override the payroll record to ensure that the CIVMAR is paid the higher base rate of pay, and the associated overtime rate of pay. *See id.* at 19 (SF-50, dated May 3, 2012); *see also id.* at 3 (Declaration of Andrew Kallgren); *id.* at 32 (Declaration of Dorothy Abreu); *id.* at 244 (CMPI 512.4-1 Clarification). In this case, the government acknowledges that the manual

override of plaintiff's payroll record did not occur due to an administrative oversight, despite the fact that the base rate of pay for a Supply Utilityman is higher than the base rate of pay for a Wiper. *Id.* at 32-33 (Declaration of Dorothy Abreu). And so, the MSC paid plaintiff at the rate of pay for a Wiper, instead of a Supply Utilityman, during his deployment aboard the USNS Drew. *Id.* at 33 (Declaration of Dorothy Abreu). The MSC subsequently determined that it had overpaid plaintiff in the amount of $5,536.36 during this deployment. *Id.* at 38 (Letter, dated June 19, 2013).

### 3.    Recoupment Efforts

In 2013, the MSC commenced recoupment efforts to recover this overpayment, but the MSC later determined that it had incorrectly initiated the involuntary debt collection process against plaintiff and repaid the money that had been recouped. *Id.* at 41 (E-Mail, dated Nov. 19, 2013).

After the Defense Finance and Accounting Services ("DFAS") assumed all payroll responsibilities for the MSC, the MSC recalculated plaintiff's debt to the government to be $4,861.18 and provided that information to DFAS in October 2014. *Id.* at 31 (Declaration of Dorothy Abreu); *id.* at 43 (Memorandum from Chris Jones, dated Oct. 1, 2014). The MSC's calculation of plaintiff's debt is based upon the difference between the hours initially paid to plaintiff using the Wiper rate of pay, with those same hours recalculated using the Supply Utilityman's rate of pay. *Id.* at 43-64 (Pay Tables). And so, the MSC notified plaintiff of his debt on January 23, 2015. *Id.* at 65-72 (E-Mail from Bonnie Fisher, dated Jan. 25, 2015).

On February 18, 2015, plaintiff timely filed a petition to dispute the debt that he owed to the MSC. *Id.* at 75 (Letter from Plaintiff's Counsel, dated Feb. 18, 2015). On November 24, 2014, DFAS issued a memorandum upholding the validity of the debt. *Id.* at 78-84, 95 (DFAS Hearing Findings and Report). In the memorandum, DFAS determined that:

> A review of Mr. Reid's account determined that he received an erroneous overpayment while he was sailing as a WIPER on board the USNS Charles Drew, in which Mr. Reid should have remained as a Utilityman. Since the annual salary of a Utilityman is ($35,719) is [sic] higher than a WIPER'S salary of ($34,850), Mr. Reid should have received the Utilityman's premium earnings associated with that position.

6

*Id.* at 83 (DFAS Hearing Findings).  And so, DFAS restarted the involuntary deductions of plaintiff's pay, and the final payment towards the debt was deducted from plaintiff's pay on April 2, 2016.  *Id.* at 96-97 (DFAS Debt Case Report).

###    4.    Plaintiff's District Court Litigation

Plaintiff originally commenced this action on June 10, 2016, in the United States District Court for the District of South Carolina.  *See generally Reid v. United States*, 2:16-cv-01902-RMG (D.S.C. filed June 10, 2016).  After the parties completed discovery, plaintiff moved to transfer this case to the United States Court of Federal Claims, pursuant to 28 U.S.C. § 1404(a) and 28 U.S.C. § 1491.  *See generally* Pl. Mot. to Transfer, dated Jan. 6, 2017.  On January 23, 2017, the District Court granted plaintiff's motion to transfer upon the ground that, "[w]hen a wage claim by a government employee abroad a government vessel exceeds $10,000, venue is only appropriate in the United States Court of Federal Claims . . . ."  *See generally* Order to Transfer, dated Jan. 23, 2017.

### B.    Procedural History

After this matter was transferred from the United States District Court for the District of South Carolina, plaintiff filed an amended complaint on April 4, 2017.  *See generally* Am. Compl.  On June 5, 2017, the government filed an answer to the amended complaint.  *See generally* Answer.

After the parties completed discovery, plaintiff filed a motion for summary judgment on September 1, 2018.  *See generally* Pl. Mot.  On October 19, 2018, the government filed a motion to dismiss, cross-motion for summary judgment, and response and opposition to plaintiff's motion for summary judgment.  *See generally* Def. Mot.

On November 16, 2018, plaintiff filed a response and opposition to the government's motion to dismiss and cross-motion for summary judgment, and a reply in support of his motion for summary judgment.  *See generally* Pl. Resp.  On February 15, 2019, the government filed a reply in support of its motion to dismiss and cross-motion for summary judgment.  *See generally* Def. Reply.

These matters having been fully briefed, the Court resolves the pending motions.

### III.    LEGAL STANDARDS

#### A.    RCFC 12(b)(1) and Jurisdiction

When deciding a motion to dismiss upon the ground that the Court does not possess subject-matter jurisdiction pursuant to RCFC 12(b)(1), this Court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); RCFC 12(b)(1). But, plaintiff bears the burden of establishing subject-matter jurisdiction, and he must do so by a preponderance of the evidence. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988). Should the Court determine that "it lacks jurisdiction over the subject matter, it must dismiss the claim." *Matthews v. United States*, 72 Fed. Cl. 274, 278 (2006).

In this regard, the United States Court of Federal Claims is a court of limited jurisdiction and "possess[es] only that power authorized by Constitution and statute . . . ." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The Tucker Act grants the Court jurisdiction over:

> [A]ny claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1).

The Tucker Act is, however, a jurisdictional statute; "it does not create any substantive right enforceable against the United States for money damages. . . . [T]he Act merely confers jurisdiction upon [the United States Court of Federal Claims] whenever the substantive right exists." *United States v. Testan,* 424 U.S. 392, 398 (1976) (alterations in original). And so, to pursue a substantive right against the United States under the Tucker Act, a plaintiff must identify and plead a money-mandating constitutional provision, statute, or regulation; an express or implied contract with the United States; or an illegal exaction of money by the United States. *Cabral v. United States,* 317 F. App'x 979, 981 (Fed. Cir. 2008) (citing *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005)); *see also Martinez v. United States*, 333 F.3d 1295, 1302 (Fed. Cir. 2003). "[A] statute or regulation is money-mandating for jurisdictional purposes if it 'can fairly be interpreted as mandating compensation for damages sustained as a result of the

breach of the duties [it] impose[s].'" *Fisher*, 402 F.3d at 1173 (quoting *United States v. Mitchell*, 463 U.S. 206, 217 (1983)).

### B. Fifth Amendment Takings

The Court possess exclusive jurisdiction over Fifth Amendment takings claims in excess of $10,000.  28 U.S.C. § 1491(a); *see also Acceptance Ins. Cos. v. United States*, 503 F.3d 1328, 1336 (Fed. Cir. 2007).  The Takings Clause of the Fifth Amendment guarantees just compensation whenever private property is "taken for public use."  U.S. CONST. amend. V.  And so, the purpose of the Takings Clause is to prevent the "[g]overnment from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole."  *Penn Central Transp. Co. v. City of New York*, 438 U.S. 104, 123 (1978) (quoting *Armstrong v. United States*, 364 U.S. 40, 49 (1960)); *see also Florida Rock Indus., Inc. v. United States*, 18 F.3d 1560, 1571 (Fed. Cir. 1994).

To have a cause of action for a Fifth Amendment takings, a plaintiff must, among other things, point to a protectable property interest that is asserted to be the subject of the takings.  *See Phillips v. Wash. Legal Found.*, 524 U.S. 156, 164 (1998) (citation omitted) ("Because the Constitution protects rather than creates property interests, the existence of a property interest is determined by reference to 'existing rules or understandings that stem from an independent source such as state law.'").  In takings matters, a protectable property interest must be a "legally-recognized property interest such as one in real estate, personal property, or intellectual property."  *Adams v. United States*, 391 F.3d 1212, 1224 (Fed. Cir. 2004).  And so, the Federal Circuit has held that "a statutory right to be paid money, at least in the context of federal employee compensation . . . is not a property interest for purposes of the Takings Clause."  *Id.* at 1225.

### C.   RCFC 56

Pursuant to RCFC 56, a party is entitled to summary judgment when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  RCFC 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Biery v. United States*, 753 F.3d 1279, 1286 (Fed. Cir. 2014).  A dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.  A fact is "material" if it could "affect the outcome of the suit under the governing law."  *Id.*

The moving party bears the burden of demonstrating the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). And so, "'the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S. Ct. 993, 8 L. Ed. 2d 176 (1962)).

In making a summary judgment determination, the Court does not weigh the evidence presented, but instead must "determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *see also Am. Ins. Co. v. United States*, 62 Fed. Cl. 151, 154 (2004); *Agosto v. INS*, 436 U.S. 748, 756, 98 S. Ct. 2081, 56 L. Ed. 2d 677 (1978) ("[A trial] court generally cannot grant summary judgment based on its assessment of the credibility of the evidence presented . . . .") (citations omitted). The Court may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita Elec. Indus. Co.*, 475 U.S. at 587. The above standard applies when the Court considers cross-motions for summary judgment. *Principal Life Ins. Co. & Subsidiaries v. United States*, 116 Fed. Cl. 82, 89 (2014); *see also Estate of Hevia v. Portrio Corp.*, 602 F.3d 34, 40 (1st Cir. 2010). And so, when both parties move for summary judgment, "'the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.'" *Abbey v. United States*, 99 Fed. Cl. 430, 436 (2011) (quoting *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed. Cir. 1987)).

### D.  5 U.S.C. § 5348

The statutory provision for prevailing rate employees of certain Federal agencies, including the Military Sealift Command, is found in Title 5, Chapter 53, Subchapter IV of the United States Code. 5 U.S.C. § 5341-49. Section 5341 sets forth the policy of the Congress for the fixing and adjustment of rates of pay of prevailing rate employees. 5 U.S.C. § 5341; *see also Nat'l Mar. Union of Am., AFL-CIO v. United States*, 682 F.2d 944, 947-48 (Ct. Cl. 1982). That policy includes four enumerated and specific principles, namely that:

> It is the policy of Congress that rates of pay of prevailing rate employees be fixed and adjusted from time to time as nearly as is consistent with the public interest in accordance with prevailing rates and be based on principles that—

> (1) there will be equal pay for substantially equal work for all prevailing rate employees who are working under similar conditions of employment in all agencies within the same local wage area;
>
> (2) there will be relative differences in pay within a local wage area when there are substantial or recognizable differences in duties, responsibilities, and qualification requirements among positions;
>
> (3) the level of rates of pay will be maintained in line with prevailing levels for comparable work within a local wage area; and
>
> (4) the level of rates of pay will be maintained so as to attract and retain qualified prevailing rate employees.

5 U.S.C. § 5341.

Specifically relevant to this dispute, Title 5, United States Code, Section 5348(a) provides the authority for setting the wages for federal mariners.  5 U.S.C. § 5348(a).  In this regard, Section 5348(a) provides that:

> (a) Except as provided by subsection (b) of this section, the pay of officers and members of crews of vessels excepted from chapter 51 of this title by section 5102(c)(8) of this title shall be fixed and adjusted from time to time as nearly as is consistent with the public interest in accordance with prevailing rates and practices in the maritime industry.

*Id.*  The sole source of the right to pay for civilian seamen—including entitlement to overtime or premium pay—is Section 5348(a).  *Daigle v. United States*, 217 Ct. Cl. 376, 384 (1978); *Blaha v. United States*, 511 F.2d 1165, 1166-67 (Ct. Cl. 1975).

This Court has long recognized that the government has broad discretion in fixing and adjusting pay under Section 5348.  *See Nat'l Mar. Union of Am.*, 682 F.2d at 949; *see also Blaha*, 511 F.2d at 1167; *Benevento v. United States*, 461 F.2d 1316, 1320 (Ct. Cl. 1972); *Daniels* v. *United States*, 407 F.2d 1345, 1347 (Ct. Cl. 1969).  When reviewing an agency's pay policy under Section 5348, this Court's role is to determine whether plaintiff has met his "heavy burden of showing that the Government's action was arbitrary or clearly wrong." *Nat'l Mar. Union of Am.*, 682 F.2d at 955 (citing *Daniels*, 407 F.2d at 1347).  And so, "[t]o have a court set aside the determinations of federal agencies in prevailing rates disputes, a plaintiff must show that there has been an abuse of discretion, or that such a determination is so arbitrary as to be clearly wrong." *Best v. United States*, 14 Cl. Ct. 720, 725 (1988) (upholding the Agency's action

where the plaintiffs did not meet their burden of showing an abuse of discretion or arbitrary action); *see e.g.*, *Daigle*, 217 Ct. Cl. at 386 ("Unless the abuse of discretion is flagrant . . . it appears better not to see it in every decision that we ourselves would not make.").

### E.  46 U.S.C. § 10313

A seaman is entitled to wages pursuant to Title 46, United States Code, Section 10313. 46 U.S.C. § 10313.  Section 10313 provides that:

> A seaman's entitlement to wages and provisions begins when the seaman begins work or when specified in the agreement required by section 10302 of this title for the seaman to begin work or be present on broad, whichever is earlier.

46 U.S.C. § 10313(a).  This provision also provides that a seaman is entitled to "one-half of the balance of wages earned and unpaid at each port at which the vessel loads or delivers cargo during the voyage," and to the balance of wages due to the seaman at "the end of a voyage."  46 U.S.C. § 10313(e), (f).  If the seaman is not paid, Section 10313 imposes a penalty on the non-paying employer.  46 U.S.C. § 10313(g).  In this regard, the statute provides that:

> When payment is not made as provided under subsection (f) of this section without sufficient cause, the master or owner shall pay to the seaman 2 days' wages for each day payment is delayed.

*Id.*

The portion of Title 46 that contains Section 10313 is found in Subtitle II, chapter 103. Subtitle II addresses the wages for a seaman and this subtitle applies to "a vessel of the United States."  46 U.S.C. § 10301.  Except as otherwise provided in the United States Code, Subtitle II does not apply to a public vessel of the United States, which is defined as:

> [A] vessel that— (A) is owned, or demise chartered, and operated by the United States Government or a government of a foreign country; and (B) is not engaged in commercial service.

46 U.S.C. § 2109; 46 U.S.C. § 2101(33).

## IV.    LEGAL ANALYSIS

The government has moved to dismiss Counts II and IV of the amended complaint upon the grounds that the Court does not possess subject-matter jurisdiction to consider plaintiff's

quantum meruit claim and plaintiff's claim to recover double wages pursuant to 46 U.S.C. § 10313(g).  Def. Mot. at 28-29, 32-33.

The parties have also filed cross-motions for summary judgment on the issues of: (1) whether plaintiff was assigned to the position of a Wiper and, thus, entitled to receive pay as a Wiper; (2) whether plaintiff is entitled to recover unpaid wages, pursuant to 5 U.S.C. § 5348(a); and (3) whether plaintiff is entitled to recover unpaid wages, pursuant to 46 U.S.C. § 10313.  *See generally* Pl. Mot.; Def. Mot.

In his motion for summary judgment, plaintiff argues that the undisputed material facts in this case show that he was assigned to the position of Wiper while serving aboard the USNS Drew and that he should have been compensated at the rate of pay for a Wiper.  Pl. Mot. at 19-24.  Plaintiff also argues that he is entitled to receive twice the amount of his unpaid wages, pursuant to 46 U.S.C. § 10313, because the MSC's failure to pay his wages was without sufficient cause.  *Id.* at 18-19.  In addition, plaintiff argues that judicial estoppel and law of the case prevent the government from arguing that Section 10313 is inapplicable to his claims for unpaid wages.[3]  *Id.* at 16-17.  And so, plaintiff requests that the Court enter summary judgment in his favor with respect to Counts I, II and III of the amended complaint and deny the government's motion to dismiss.  *Id.* at 26; *see also* Am. Compl.

In its motion to dismiss and cross-motion for summary judgment, the government argues that plaintiff has not established that the MSC abused its discretion by recouping his pay, because the MSC has broad discretion to administer CIVMAR pay pursuant to 5 U.S.C. § 5348.  Def. Mot. at 11-20.  The government also argues that plaintiff is not entitled to recover unpaid wages pursuant to 46 U.S.C. § 10313, because that statute is inapplicable to plaintiff.  *Id.* at 25-28.  Lastly, the government argues that plaintiff fails to allege a plausible Fifth Amendment takings claim, because he does not have a protectable property interest in receiving unpaid wages.  *Id.* at 33-34.  And so, the government requests that the Court dismiss Counts II and IV of the amended complaint and grant summary judgment in its favor on the remaining counts of the amended complaint.  *Id.* at 1.

---

[3] In his motion for summary judgment, plaintiff raises three new arguments that are not raised in the amended complaint namely, that:  (1) his SF-50 incorrectly identifies his position; (2) the Budget Control Act of 2011 affected the MSC's ability to pay CIVMARs; and (3) he was assigned to the MSC for a "one-voyage position."  Pl. Mot. at 3, 6, 8, 20-21.

For the reasons set forth below, the Court does not possess subject-matter jurisdiction to consider plaintiff's quantum meruit claim.  A careful reading of the amended complaint also makes clear that plaintiff fails to plausibly allege a takings claim in Count V of the amended complaint.  The undisputed material facts in this case also show that plaintiff is not entitled to recover unpaid wages pursuant to Section 10313, because that statute is not applicable to this case.  In addition, plaintiff has not shown that the MSC abused its discretion by fixing and recouping his pay pursuant to 5 U.S.C. § 5348.  And so, the Court:  (1) **GRANTS-IN-PART** the government's motion to dismiss; (2) **DENIES** plaintiff's motion for summary judgment; (3) **GRANTS** the government's cross-motion for summary judgment with regards to Counts I, II, III, and V of the amended complaint; and (4) **DISMISSES** the amended complaint.

### A.  The Court Must Dismiss Plaintiff's Quantum Meruit Claim

As an initial matter, the Court must dismiss plaintiff's quantum meruit claim because this claim is jurisdictionally precluded under the Tucker Act.  In the amended complaint, plaintiff alleges that he "worked as a Wiper and, in equity, was entitled to be paid as a Wiper."  Am. Compl. at ¶ 32.  And so, plaintiff maintains that he may recover pay in this action under quantum meruit.  *Id.*

The Federal Circuit has held, however, that "[a] recovery under quantum meruit is based on an implied-in-law contract."  *Int'l Data Prods. Corp. v. United States*, 492 F.3d 1317, 1325 (Fed. Cir. 2007); *see also United Pac. Ins. Co. v. United States*, 464 F.3d 1325, 1329-30 (Fed. Cir. 2006).  It is also well-established that this Court does not possess subject-matter jurisdiction to consider claims based upon an implied-in-law contract under the Tucker Act.  *Hercules Inc. v. United States*, 516 U.S. 417, 423 (1996).  Given this, plaintiff's quantum meruit claim falls beyond the reach of the Court's Tucker Act jurisdiction.  *See id.*  And so, the Court must dismiss plaintiff's quantum meruit claim for lack of subject-matter jurisdiction.  RCFC 12(b)(1).

### B.  Plaintiff Has Not Alleged A Plausible Takings Claim

The government also persuasively argues that the Court should deny plaintiff's takings claim, because plaintiff fails to allege a plausible takings claim in the amended complaint.  To have a viable cause of action for a Fifth Amendment takings, plaintiff must, among other things, point to a protectable property interest that is asserted to be the subject of the takings.  *See Phillips v. Wash. Legal Found.*, 524 U.S. 156, 164 (1998); *Adams v. United States*, 391 F.3d

1212, 1224 (Fed. Cir. 2004) (stating that under the Takings Clause, "property" is a "legally-recognized property interest such as one in real estate, personal property, or intellectual property."). In the amended complaint, plaintiff alleges that the MSC's involuntary deductions of his pay "constitute takings without just compensation." Am. Compl. at ¶ 34. And so, plaintiff's takings claim appears to be based upon an alleged statutory right to receive pay pursuant to 5 U.S.C. § 5348(a) and 46 U.S.C. § 10313. *Id.* at ¶ 5.

The Federal Circuit has held, however, that a "statutory right to be paid money . . . is not a property interest for purposes of the Takings Clause." *Adams*, 391 F.3d at 1225. Given this, plaintiff has not shown that he has a protectable property interest in recovering unpaid wages in this case. And so, the Court must grant the government's cross-motion for summary judgment with respect to Count V of the amended complaint and deny plaintiff's takings claim.

### C. Plaintiff Cannot Pursue A Claim Under Section 10313

The Court must also deny plaintiff's claims for unpaid wages pursuant to 46 U.S.C. § 10313, because Section 10313 is not applicable to the facts of this case. It is undisputed that the USNS Drew is a public vessel of the United States—namely, a vessel that is owned and operated by the United States Government and not engaged in commercial service. Def. Mot. at 26; Pl. Mot. at 14-22; *see also* 46 U.S.C. § 2101(33). And so, to recover unpaid wages pursuant to Section 10313, plaintiff must show that Section 10313 applies to public vessels of the United States.

Plaintiff cannot make such a showing in this case. A careful reading of the portion of Title 46 that governs vessels and seamen and contains Section 10313 ("Subtitle II") makes clear that Section 10313 does not apply to public vessels of the United States. Specifically, Subtitle II applies to "a vessel of the United States" that is on a foreign voyage or of a certain size. 46 U.S.C. § 10301(a); *see also* 46 U.S.C. § 116.[4] But, Subtitle II also makes clear that a *public* vessel of the United States is not subject to this subtitle. 46 U.S.C. § 2109 (emphasis supplied).

---

[4] A vessel of the United States is defined as any "vessel documented under chapter 121 of [Title 46]." 46 U.S.C. § 116. By comparison, a public vessel of the United States is defined as "a vessel that—(A) is owned, or demise chartered, and operated by the United States Government or a government of a foreign country; and (B) is not engaged in commercial service." 46 U.S.C. § 2101(33). In addition, Section 2109 provides in relevant part that: "[e]xcept as otherwise provided, this subtitle does not apply to a public

In this regard, Title 46, United States Code, Section 2109 provides that "this subtitle does not apply to a *public* vessel of the United States." *Id.* (emphasis supplied). Because Section 10313 is contained in Subtitle II, the Court agrees with the government that this statute does not apply to a public vessel like the USNS Drew. And so, plaintiff cannot rely upon Section 10313 to pursue claims for unpaid wages in this case.

### D. Plaintiff Has Not Shown That The MSC Abused Its Discretion Regarding The Administration Of His Pay

The government also persuasively argues that the MSC did not abuse its discretion in fixing and recouping plaintiff's pay. This Court has long recognized that the government has broad discretion in fixing pay under 5 U.S.C. § 5348. *See Nat'l Mar. Union of Am., AFL-CIO v. United States*, 682 F.2d 944, 949 (Ct. Cl. 1982); *see also Blaha v. United States*, 511 F.2d 1165, 1167 (Ct. Cl. 1975); *Benevento v. United States*, 461 F.2d 1316, 1320 (Ct. Cl. 1972); *Daniels* v. *United States*, 407 F.2d 1345, 1347 (Ct. Cl. 1969). When reviewing an agency's pay policy under Section 5348, this Court's role is to determine whether plaintiff has met his heavy burden of showing that the government's action was arbitrary or clearly wrong. *Nat'l Mar. Union of Am.*, 682 F.2d at 955 (citing *Daniels*, 407 F.2d at 1347). And so, plaintiff must show that there has been an abuse of discretion, or that the MSC's determination is so arbitrary as to be clearly wrong, in order to prevail on a challenge to the government's decision regarding fixing pay. *Best v. United States*, 14 Cl. Ct. 720, 725 (1988).

For the reasons discussed below, plaintiff has not met his burden of proof in this case. And so, the Court **DENIES** plaintiff's motion for summary judgment and **GRANTS** the government's cross-motion for summary judgment on this final issue.

### 1. The Undisputed Material Facts Show That Plaintiff Was Temporarily Reassigned To Perform Wiper Duties

As an initial matter, the undisputed material facts in this case show that plaintiff was temporarily reassigned to perform the duties of a Wiper while deployed aboard the USNS Drew. Plaintiff's deployment to the USNS Drew is recorded in his SF-50, dated May 3, 2012, which provides that the nature of the employment action taken is a "reassignment." Def. App'x at 19

---

vessel of the United States." 46 U.S.C. § 2109. Plaintiff has not identified an exception to this limitation. Pl. Resp. at 14-23.

(SF-50, dated May 3, 2012).  The SF-50 also provides that plaintiff would be "performing duties of 8363 Wiper" during his deployment aboard the USNS Drew.  *Id.*

Plaintiff's SF-50 and the applicable MSC pay regulations make clear that the MSC did not change plaintiff's rate of pay from a Supply Utilityman to a Wiper during this deployment. *Id.*; *see also id.* at 25-27 (Pacific Schedule of Wages).  Notably, the MSC's pay regulations provide that a "reassignment" is a "[p]ersonnel action taken to place an employee in a different position (rating) *without a change to the base rate of pay*."  *Id.* at 219 (CMPI 330.1-5) (emphasis supplied).  Consistent with this regulation, plaintiff's SF-50 provides that the specified amounts of plaintiff's basic pay and locality adjustment "reflect permanent salary which is higher than ship's salary."  *Id.* at 19 (SF-50, dated May 3, 2012).  And so, the undisputed material facts in this case show that the MSC temporarily reassigned plaintiff to the position of a Wiper without making any change to plaintiff's rate of pay.[5]

Plaintiff's argument that the totality of the circumstances in this case show that he was assigned to the position of a Wiper—and thus entitled to receive Wiper pay—is also belied by the factual record in this case.  Plaintiff correctly observes that his SF-50 is not necessarily determinative of his employment status and that the Court may consider evidence that demonstrates that a ministerial error occurred regarding the execution of this form in determining his employment status.  *Grigsby v. United States Dep't of Commerce*, 729 F.2d 772, 775-76 (Fed. Cir. 1984).   But, plaintiff puts forward no evidence to show that his SF-50 "incorrectly [identified his] position as a 'C848 Utilityman.'"  Pl. Mot. at 6, 20-21.

Plaintiff also does not show that the totality of the circumstances in this case establish that the MSC changed his rate of pay while deployed aboard the USNS Drew.  In this regard, plaintiff points to three documents to show that he was assigned to the position of Wiper while aboard the USNS Drew, namely: (1) the OPA message generated at the outset of his deployment on the USNS Drew, which states that plaintiff's duty status was the position of a Wiper effective May 3, 2012; (2) the OPA message generated upon his return from deployment, dated September

---

[5] The Court's conclusion that plaintiff was temporarily reassigned to the position of a Wiper while deployed aboard the USNS Drew is reinforced by an April 30, 2012, email, which provides a recommendation that plaintiff be assigned to the USNS Drew "as relief to fill [the] vacant WIPER BILLET" position.  Pl. Mot. at Ex. 1 (MSC E-Mail, dated April 30, 2012).  This e-mail also makes clear that "WIPER Reid is on a TEMP PROM to WIPER (363) for this assignment."  *Id.*

4, 2012, which states that plaintiff's duty status was the position of Wiper while deployed; and (3) a sea service letter from the master of the USNS Drew, dated March 29, 2013, which states that plaintiff was a Wiper while deployed aboard the USNS Drew. Pl. Mot. at 5-6; *see also* Def. App'x at 30 (OPA, dated May 6, 2012); *id.* at 34 (OPA, dated Sept. 4, 2012); Pl. Mot. at Ex. 6 (Sea Service Letter, dated March 29, 2013). But, a review of these documents makes clear that the documents simply confirm that plaintiff performed the duties of a Wiper while deployed aboard the USNS Drew. *Id.* These documents also do not address any change in plaintiff's permanent assignment, nor do they state that plaintiff should be compensated at the rate of pay for a Wiper. Def. App'x at 30 (OPA, dated May 6, 2012); *id.* at 34 (OPA, dated Sept. 4, 2012).

Indeed, it is undisputed that plaintiff resumed performing the duties of his permanent assignment as a Supply Utilityman—and received pay at the rate of pay for a Supply Utilityman—after his deployment aboard the USNS Drew concluded. *Id.* at 35 (SF-50, dated September 5, 2012). Given these undisputed facts, the factual record in this case shows that plaintiff was temporarily reassigned to perform the duties of a Wiper and that he had no right to receive pay as a Wiper. And so, the Court denies plaintiff's motion for summary judgment and grants the government's cross-motion for summary judgment on this issue.

### 2.    The MSC's Policy To Pay Plaintiff At The Supply Utilityman Rate Was Reasonable

The undisputed material facts in this matter also show that the MSC did not abuse its discretion in fixing plaintiff's rate of pay and recouping the overpayment of plaintiff's wages. It is undisputed that, after initially paying plaintiff at the rate of pay for a Wiper, the MSC determined that it should have compensated plaintiff at the rate of pay for a Supply Utilityman for all regular and overtime work performed while aboard the USNS Drew. *See id.* at 32-33 (Declaration of Dorothy Abreu). While plaintiff disagrees with the MSC's decision, the undisputed facts in this case make clear that this decision is consistent with Section 5348, the CMPI, and the MSC's pay policy. *See id.* at 19 (SF-50, dated May 3, 2012); *see also id.* at 3 (Declaration of Andrew Kallgren); *id.* at 32 (Declaration of Dorothy Abreu); *id.* at 244 (CMPI 512.4-1 Clarification).[6]

---

[6] As the government acknowledges, MSC was at times unsure of its position regarding the amount of plaintiff's pay. Initially, the MSC paid plaintiff at the rate of pay for a Wiper during his deployment on the USNS Drew. Def. App'x at 33 (Declaration of Dorothy Abreu). In 2013, the MSC commenced

As the government correctly argues in its cross-motion for summary judgment, the MSC's decision to compensate plaintiff at the rate of pay for a Supply Utilityman while deployed aboard the USNS Drew is consistent with the Congress's intent regarding the compensation of prevailing rate employees. *See* Def. Mot. at 19-20.  Congress has set forth the policy for fixing and adjusting the rates of pay of prevailing rate employees, like plaintiff, in Title 5, United States Code, Section 5341.  5 U.S.C. § 5341.  Section 5341 enumerates four guiding principles for prevailing rate pay, including that:

> It is the policy of Congress that rates of pay of prevailing rate employees be fixed and adjusted from time to time as nearly as is consistent with the public interest in accordance with prevailing rates and be based on principles that—
>
> > (1) there will be equal pay for substantially equal work for all prevailing rate employees who are working under similar conditions of employment in all agencies within the same local wage area.

*Id.*; *see also Nat'l Mar. Union of Am.*, 682 F.2d at 947.

While Section 5341 generally requires that the government provide equal pay for substantially equal work for prevailing rate employees, Congress has also made clear that the government has broad discretion to establish such pay "consistent with the public interest."  5 U.S.C. § 5341.  In this regard, 5 U.S.C. § 5348(a) provides that:

> (a) Except as provided by subsection (b) of this section, the pay of officers and members of crews of vessels excepted from chapter 51 of this title by section 5102(c)(8) of this title shall be fixed and adjusted from time to time as nearly *as is consistent with the public interest* in accordance with prevailing rates and practices in the maritime industry.

5 U.S.C. § 5348(a) (emphasis supplied).  The principles enumerated in Section 5341 "do not exhaust the meaning of—and hence the range of discretion by—the public interest."  *Nat'l Mar. Union of Am.*, 682 F.2d at 952-53.  Given this, the "public interest is a consideration placed in opposition to equality of pay. . . . [And so,] equality of pay may not always be entirely consistent

---

recoupment efforts to recover an overpayment of plaintiff's pay, but the MSC later determined that it had incorrectly initiated the involuntary debt collection process against plaintiff.  *Id.* at 41 (E-Mail, dated Nov. 19, 2013).  In 2014, the MSC again determined that plaintiff had been overpaid.  *Id.* at 43 (Memorandum from Chris Jones, dated Oct. 1, 2014).  And so, the MSC notified plaintiff of this debt on January 23, 2015, and later recouped these funds.  *Id.* at 65-72 (E-Mail from Bonnie Fisher, dated Jan. 25, 2015); *id.* at 96-97 (DFAS Debt Case Report).

with the public interest," when the government fixes and adjusts pay for members and crews of vessels under Section 5348. *Id.* at 949.

The undisputed material facts in this case show that the MSC appropriately exercised the discretion afforded under Sections 5341 and 5348 to fix plaintiff's pay, consistent with the public interest. The undisputed material facts show that the MSC compensated plaintiff at the rate of pay for his permanent position as a Supply Utilityman, based upon its policy to pay CIVMARs that have been temporarily reassigned to a position that has a lower base rate of pay at the rate of pay for their permanent position. *See* Def. App'x at 19 (SF-50, dated May 3, 2012); *see also id.* at 3 (Declaration of Andrew Kallgren); *id.* at 32 (Declaration of Dorothy Abreu); *id.* at 244 (CMPI 512.4-1 Clarification). Plaintiff correctly observes that he received a different amount of pay—including less overtime pay—than a CIVMAR employee who was permanently assigned to the position of Wiper would have received for performing similar work under this policy. Pl. Mot. at 12-13. But, this difference in pay is due to the MSC's need to vary the compensation for CIVMAR employees, based upon the needs of a particular ship and the ship's coast, horsepower ratings, tonnage and engine category. Def. Mot. at 12; *see also* Def. App'x at 2 (Declaration of Andrew Kallgren).

Given this, the Court agrees with the government that the MSC's policy to vary the pay of CIVMAR employees is consistent with the public interest in ensuring that the needs of the MSC are met when managing its fleet. The MSC appropriately exercised its discretion to fix plaintiff's pay consistent with Section 5348 and the MSC's pay policy. And so, the Court does not find the MSC's actions to be clearly wrong or run afoul of the requirements of Section 5348, as plaintiff suggests.

The undisputed material facts in this case also show that the MSC compensated plaintiff in accordance with the CMPI applicable to his pay. In his motion for summary judgment, plaintiff incorrectly argues that the MSC violated CMPI 610 by recouping his pay, because this regulation requires that CIVMARs "must be given just compensation for the premium pay work they perform." Pl. Mot. at 14. CMPI 610 provides that:

> It is the policy of Commander, Military Sealift Command (COMSC) that CIVMARs will be given just compensation for their services. CIVMARs will not be required to perform work for which premium pay is authorized, and then denied such pay.

Def. App'x at 118 (CMPI 610.1-3).  And so, this regulation requires that the MSC compensate CIVMARs for any overtime work performed.

While it is undisputed that plaintiff received *less* overtime pay than a Wiper would have received for performing the same duties aboard the USNS Drew, the undisputed material facts show that the MSC compensated plaintiff for all overtime performed.  *See id.* at 27 (Pacific Schedule of Wages) (showing that the overtime rate of pay for a Wiper is higher than the overtime pay rate of pay for a Supply Utilityman).  Given this, plaintiff has not shown that the MSC violated CMPI 610 in connection with his pay.

Plaintiff's argument that the MSC violated CMPI 330, because a reassignment to a lower rate of base pay is only appropriate if requested by the mariner, is similarly misguided.  Pl. Mot. at 23-24.  As discussed above, CMPI 330 defines a "reassignment" as a "[p]ersonnel action taken to place an employee in a different position (rating) without a change to the base rate of pay."  Def. App'x at 219 (CMPI 330.1-5).  That is precisely what occurred in this case.  The MSC temporarily reassigned plaintiff to perform the duties of a Wiper, and compensated plaintiff at the higher base rate of pay for a Supply Utilityman, during his deployment aboard the USNS Drew.  *See id.* at 33 (Declaration of Dorothy Abreu).  Because there was no change in plaintiff's rate of pay, plaintiff has not shown that the MSC violated the requirements of CMPI 330.  *See id.*

Plaintiff also has not shown that the MSC violated CMPI 531.  Pl. Mot. at 13.  CMPI 531 provides, in relevant part, that "[t]he marine employee officially assigned to an authorized position is entitled to only the corresponding wages for that position found in the appropriate schedule of wages."  Def. App'x at 112 (CMPI 531.4-3(b)).  As discussed above, the undisputed material facts show that plaintiff was officially assigned to the position of a Supply Utilityman during his deployment aboard the USNS Drew, and that the MSC appropriately compensated plaintiff at the base rate of pay and overtime rate of pay for his authorized position as a Supply Utilityman.  *See id.* at 219 (CMPI 330.1-5); *id.* at 19 (SF-50, dated May 3, 2012); *see also id.* at 3 (Declaration of Andrew Kallgren); *id.* at 32 (Declaration of Dorothy Abreu); *id.* App'x at 244 (CMPI 512.4-1 Clarification).  And so, plaintiff simply has not shown that the MSC violated any of the pay regulations applicable to this case.

Indeed, at bottom, plaintiff's dispute with the MSC appears to be that the amount of his overtime pay while deployed abroad the USNS Drew was less than the overtime pay that a

Wiper would have received for similar work.  While plaintiff's dissatisfaction with this outcome is understandable, the Court does not believe that the MSC's pay policy is arbitrary, or beyond the boundaries of the broad discretion afforded to the MSC to fix and adjust plaintiff's pay under Section 5348.  And so, the Court denies plaintiff's motion for summary judgment and grants the government's cross-motion for summary judgment with respect to Count III of the amended complaint.

## V.    CONCLUSION

In sum, plaintiff has not established that the Court possesses subject-matter jurisdiction to consider his quantum meruit claim, and he has not alleged a plausible takings claim in the amended complaint.  Plaintiff also fails to show that Section 10313 is applicable to his claims for unpaid wages.

In addition, the undisputed material facts in this case make clear that the MSC appropriately compensated plaintiff and recouped the overpayment of plaintiff's wages, consistent with Section 5348 and the MSC's pay regulations.  And so, for the foregoing reasons, the Court:

1.   **GRANTS-IN-PART** the government's motion to dismiss;

2.   **DENIES** plaintiff's motion for summary judgment;

3.   **GRANTS** the government's cross-motion for summary judgment with regards to Counts I, II, III, and V of the amended complaint; and

4.   **DISMISSES** the amended complaint.

The Clerk shall enter judgment accordingly.

Each party shall bear their own costs.

**IT IS SO ORDERED.**

s/ Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
Judge